**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

KATHRYN STORY,

                Plaintiff,

vs.                                            Case No. 8:15-cv-331-T-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Kathryn Story ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of "[a]rthritis," "kidney aneurysm," "high blood pressure," "obesity," "depression," "severe arthritis in left hip," "both knees bone on bone," "[a]rthritis in both hands," "heel spurs on both feet," and "acid reflux." See Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed May 8, 2015, at 202. (capitalization and emphasis omitted). On April 18, 2011, Plaintiff filed an application for DIB, alleging an onset of disability of September 11, 2010. Tr. at 183-84. Plaintiff's application was denied initially, Tr. at 76-86, 87, and on reconsideration, Tr. at 88-100, 101-02.

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed May 8, 2015; Reference Order (Doc. No. 17), entered September 11, 2015.

On February 7, 2013, an Administrative Law Judge ("ALJ") held a hearing at which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 14-75. At the time of the hearing, Plaintiff was forty-nine (49) years old. Tr. at 23. On June 28, 2013, the ALJ issued a Decision finding Plaintiff not disabled from September 11, 2010, through the date of the Decision. Tr. at 106-13. Plaintiff then requested review by the Appeals Council. Tr. at 12-13. On December 14, 2014, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. Tr. at 1-3. On February 17, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff makes two arguments on appeal. First, she argues that "there was not substantial evidence to support the ALJ's findings in this case," and second, that "the ALJ did not properly evaluate the opinion of the treating physician in this case." Plaintiff's Memorandum of Law (Doc. No. 15; "Pl.'s Mem."), filed July 10, 2015, at 10-14 (emphasis and capitalization omitted). Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Def.'s Mem.") on September 8, 2015.

After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four of the five-step inquiry, where her inquiry ended based on her step four finding. See Tr. at 108-12. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since September 11, 2010, the alleged onset date." Tr. at 108 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: polyarthritis, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the bilateral knees and right hip, gastroesophageal reflux disease, fibromyalgia, and hiatal hernia." Tr. at 108 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 109 (emphasis and citations omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR [§] 404.1567(a), with the following deviations/limitations: lifting and carrying up to 20 pounds occasionally and up to ten pounds frequently. Further, [Plaintiff] is limited to environments without concentrated exposure to heat or to workplace hazards, including heavy machinery and unprotected heights. Finally, [Plaintiff] is limited to work that permits [Plaintiff] to alternate between sitting and standing at-will during the workday to alleviate symptoms of pain and discomfort.

Tr. at 110 (emphasis omitted). At step four, the ALJ found, with the assistance of a VE, that Plaintiff is "capable of performing past relevant work as a dispatch supervisor." Tr. at 112 (emphasis omitted). The ALJ found that "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 112 (emphasis and citation omitted). Because the ALJ found Plaintiff capable of performing her past relevant work, the ALJ was not required to and did not proceed to step five. The ALJ concluded that Plaintiff "has not been under a disability . . . from September 11, 2010, through the date of th[e] [D]ecision." Tr. at 112 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a

-4-

preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As indicated above, Plaintiff raises two issues before this Court.  The first concerns the ALJ's failure to discuss the opinions of two consulting examiners and to include their findings regarding Plaintiff's mental limitations in Plaintiff's RFC.  Tr. at 10-12.  The second issue concerns the ALJ's handling of the opinions of treating physician, Avantica Gondi, M.D. Pl.'s Mem. at 13-14. Because both issues challenge the ALJ's treatment of medical opinions, the undersigned will first discuss the applicable law regarding medical opinions, and then discuss the issues in turn.

**A.   Applicable Law**

The Regulations establish a "hierarchy" among medical opinions[3] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[4] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by

---

[3] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

[4] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence). An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence

supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

**B. Consulting Opinions**

Plaintiff was evaluated by Robert M. Coleman, Psy.D., on June 24, 2011, upon referral by the Social Security Administration.  Tr. at 403-06.  Dr. Coleman diagnosed Plaintiff with "[m]ajor depresiive disorder, [r]ecurrent, [m]oderate" and "[g]eneralized [a]nxiety [d]isorder."  Tr. at 406.  It was observed that "[o]verall, the content of [Plaintiff's] speech was noted to be relevant, coherent, and logical."  Tr. at 403.  Further, Plaintiff's "attitude was positive and level of cooperation and effort were positive and appropriate."  Tr. at 403.  Plaintiff had complaints of "depression and anxiety,"  Tr. at 404.  Her "[c]urrent mood was reported as '[a]lright' [and her] affect appeared normal."  Tr. at 404.  Dr. Coleman stated that

> [Plaintiff] met the following criteria for depression: [Plaintiff] reported depressed mood, irritability, difficulty falling asleep, waking several times during the night, hearing voices speaking at night during  dreams, difficulty concentrating, anenergia, and anhedonia. [Plaintiff] reported first experiencing these symptoms since her hysterectomy in October or December 2010. It was reported that [Plaintiff] experiences these symptoms several days out of the week. [Plaintiff] stated that these symptoms typically last for most of the day. The intensity of [Plaintiff's] symptoms was reported as being moderate. [Plaintiff] also reported

> hearing voices in her dreams or during semi-conscious states which was not viewed as psychosis.
>
> [Plaintiff] met the following criteria for anxiety: [Plaintiff] reported experiencing excessive worry, difficulty controlling the worry, difficulty falling asleep, waking several times during the night, becoming easily angered at other people, irritability, difficulty concentrating problems and muscle tension. [Plaintiff] reported first experiencing these symptoms in February 2011. It was reported that [Plaintiff] experiences these symptoms every day. [Plaintiff] stated that these symptoms typically last until she goes off by herself, lasting an hour to an hour and a half, recurring several times during the day. The intensity of the [Plaintiff's] symptoms was reported as being moderate.

Tr. at 404.

Upon mental status evaluation, Dr. Coleman noted that Plaintiff was "oriented to person, situation, and time and displayed a polite and cooperative attitude[, and that her] general thought processes were coherent, logical, and goal directed." Tr. at 405. Plaintiff's "[t]hought form and content during the mental status evaluation were relatively normal." Tr. at 405. The following observations were made:

> Attention and concentration were adequate. Speed of processing was within normal limits. Construction was within normal limits and [Plaintiff's] visual·motor coordination was determined to be within normal limits. Mental flexibility was within normal limits. Auditory and written receptive language was within normal limits. Auditory and written expressive language was within normal limits. Immediate memory was within normal limits. Recent memory was within normal limits. Mental computation was adequate. Written computation was within normal limits. The client displayed good social skills. Reasoning appeared adequate, and judgment related to self-care and social problem-solving was adequate.

Tr. at 405.

Plaintiff saw Anne-Marie Nicolas, Psy.D., on November 10, 2011, for an evaluation upon referral by the Social Security Administration. Tr. at 467-70. Dr. Nicolas similarly diagnosed Plaintiff with "[m]ajor [d]epressive [d]isorder, [r]ecurrent, [m]oderate" and "[p]anic

-9-

[d]isorder without [a]goraphobia." Tr. at 469. Plaintiff reported mental health conditions of "depression and anxiety" and described her current mood as "depressed and blah." Tr. at 467. Dr. Nicolas discussed Plaintiff's complaints:

> [Plaintiff] reported having experienced some significant depressive symptoms for a period of one year with previous bouts of depression. [Plaintiff] mentioned presenting with the following depressive symptoms: depressed mood, appetite varies, loss of interest in things clean and cook, fatigue/loss of energy, withdrawn, feelings of empty, decreased concentration, easily frustrated/irritated, tearful episodes, and thoughts of death.
>
> [Plaintiff] indicated being aware of experiencing excessive anxiety or worry occurring for more days than not for at least six months about a number of places or activities. [Plaintiff] reported the following present symptoms: difficulty controlling the worry, difficulty falling or staying asleep, unsatisfying sleep, being easily fatigued, irritability, and difficulty concentrating.
>
> [Plaintiff] reported experiencing unexpected high anxiety and worries about having another panic attack since about month ago with two or three a week. [Plaintiff] indicated having at least the following four symptoms during these anxiety attacks: palpitations, pounding heart or accelerated heat rate, sweating, shaking, sensations of shortness of breath, chest pains or discomfort, abdominal distress, and lightheaded[.] [Plaintiff] mentioned avoiding take [sic] medication, and staying away from people to reduce chances of another panic attack.

Tr. at 468.

> Dr. Nicolas conducted a mental status evaluation of Plaintiff and noted the following:
>
> [Plaintiff] was oriented to person, place, situation, and time and displayed a polite and cooperative attitude. [Plaintiff's] general thought processes were coherent, logical, and goal directed. Thought form and content during the mental status evaluation were relatively normal. [Plaintiff's] intelligence appeared to be average, and fund of knowledge appeared to be adequate. Insight appeared to be adequate based on the clinician's observations. [Plaintiff's] overall presentation and personality style was characterized as relatively normal.
>
> Attention and concentration were within normal limits. Speed of processing was within normal limits. Construction was adequate and [Plaintiff's] visual-motor coordination was determined to be adequate. Mental flexibility was fair. Auditory and written receptive language was good. Auditory and written expressive

> language was adequate. Immediate memory was adequate. Recent memory was mildly impaired as evidenced by [Plaintiff] recalling 2 of 3 words without prompts. Mental computation was adequate. Written computation was good. [Plaintiff] displayed adequate social skills. Abstract reasoning appeared adequate, and judgment related to self-care and social problem-solving was adequate.

Tr. at 469.

Both Dr. Coleman and Dr. Nicolas described Plaintiff's prognosis as "guarded." Tr. at 406, 469. And Dr. Coleman opined that based on clinical observations and Plaintiff's report, Plaintiff's "symptoms . . . appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions." Tr. at 406. Similarly, Dr. Nicolas opined that these factors were being mildly to moderately impacted by Plaintiff's mental health symptoms. Tr. at 469.

Plaintiff argues that the ALJ was obligated to consider and discuss these consultants' findings that her vocational performance would be impacted by her problems. Pl.'s Mem. at 11. Defendant responds that the ALJ was not obligated to mention every piece of evidence and that the ALJ properly considered Alicia Maki, Ph.D.'s opinion and Dr. Maki considered these consulting opinions. Def.'s Mem. at 5-6.

As consultative examiners, Dr. Coleman and Dr. Nicolas are properly classified as non-treating sources. See 20 C.F.R. §§ 404.1502, 416.902. As with other "medical opinions," the ALJ must state with particularity the weight given to the medical opinion of a nontreating source and the reasons for assigning that weight. Winschel, 631 F.3d at 1179 (quoting Sharfarzis v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)).

Here, the ALJ not only failed to state the weight attributed to the mental health opinions of Dr. Coleman and Dr. Nicolas, but the ALJ failed to discuss or even mention these doctors at all.  Thus, it is impossible for the undersigned to determine "whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)).

Defendant's argument that there was no error because the ALJ considered Dr. Maki's opinion and Dr. Maki considered the opinions of Dr. Nicolas and Dr. Coleman, see Def.'s Mem. at 6, is unavailing.  Defendant's analysis cannot serve as a post hoc justification to save the ALJ's otherwise infirm decision. See Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).  It is not the duty of Defendant or the Court to supply reasons for the ALJ's finding; rather, that duty rests with the ALJ.  See Austin v. Astrue, No. 5:07-cv-52-MCR-EMT, 2008 WL 2385520, at *8 n.7 (N.D. Fla. June 9, 2008) (unpublished) (recognizing the Commissioner's arguments in support of the ALJ's discounting of a treating physician's opinion, but stating that "[w]hile [the arguments] may be true, the ALJ did not make these findings"); see also Green v. Shalala, 51 F.3d 96, 100-01 (7th Cir. 1995); Cline v. Sullivan, 939 F.2d 560, 563-69 (8th Cir. 1991).

Moreover, given that the ALJ did not account for any mental health limitations in the RFC assessed, the undersigned concludes that the error in failing to discuss the opinions of Dr. Nicolas and Dr. Coleman would not be harmless.  Accordingly, reversal and remand is required for further consideration of the opinions of Drs. Nicolas and Coleman and to

articulate the weight the Commissioner attributes to these doctors' opinions and the reasons therefor.

## C.  RFC

Plaintiff next claims error in the ALJ's failure to incorporate the opinions of Dr. Coleman and Dr. Nicolas into her RFC assessment.  Pl.'s Mem. at 11-12.  In response, Defendant argues that "Plaintiff failed to meet her burden of proving her mental condition would have affected her ability to work."  Def. Mem. at 7.  The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four of the sequential evaluation process to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1545(a)(5).  In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Based upon the conclusion reached above that the ALJ erred in failing to articulate the weight attributed to the opinions of Dr. Coleman and Dr. Nicolas and the reasons therefor, the undersigned concludes that reversal is warranted for the Commissioner to reconsider his RFC finding in conjunction with his reconsideration of these doctors' respective opinions.

## D.  Opinions of Dr. Gondi

-13-

Plaintiff acknowledges that the ALJ attributed "great weight" to one of the opinions of her treating physician, Dr. Gondi, but claims error in the ALJ's failure to discuss or explain the discrepancy with other opinions of the doctor. Pl.'s Mem. at 14. Defendant responds that "a statement that a claimant is 'disabled' or 'unable to work' is not a medical opinion and the statement is not entitled to controlling weight or any special significance." Def.'s Mem. at 9 (citations omitted).

According to Plaintiff, the opinions at issue are Dr. Gondi's opinion of February 8, 2011 that Plaintiff was capable of working 6 hours in an 8-hour workday, Tr. at 546; her March 22, 2011 opinion that Plaintiff was permanently disabled, Tr. at 302; her opinion on September 20, 2012[5] that Plaintiff could perform sedentary work on a full-time basis, Tr. at 484-85; and her opinion of July 3, 2012 finding Plaintiff could sit for a total of 9[6] hours and work for a total of 11 hours per day, Tr. at 500. See Pl.'s Mem. at 14.

In discussing the opinions of Dr. Gondi, the ALJ stated as follows:

> As it relates to medical opinions, I assigned the greatest weight to the September 20, 2012 medical opinion of [Plaintiff's] primary care physician, Avantica Gondi, M.D. Dr. Gondi opined that [Plaintiff] was able to perform sedentary work on a full-time basis, consistent with the [RFC] above. I find that work on the sedentary level fully accommodated [Plaintiff's] polyarthritis, fibromyalgia, obesity, and poor exercise tolerance.

Tr. at 111 (citation omitted).

---

[5]   Plaintiff erroneously refers to the date of this opinion as October 10 and October 11, 2011. Pl.'s Mem. at 6, 14. The form signed by Dr. Gondi is dated September 20, 2012. Tr. at 485.

[6]   The ALJ does not specifically discuss Dr. Gondi's opinion of July 3, 2012. Plaintiff references this opinion as Plaintiff "could perform work for 11 hours a day." Pl.'s Mem. at 14. However, in her statement of facts, she also notes that the 9 (referring to sitting hours) may have been a 4 consistent with the doctor's prior opinion. Id. at 7, n.1; see Tr. at 500.

The ALJ does not mention the other three opinions, explain the inconsistencies between the opinions, or provide a good cause statement for why those opinions were rejected. Because the ALJ failed to articulate adequate reasons showing "good cause" for discounting the other opinions of Dr. Gondi, this matter is due to be reversed and remanded. Lewis, 125 F.3d at 1440. On remand, the Commissioner shall ensure Dr. Gondi's opinions are properly considered and assigned the appropriate weight.

## V. Conclusion

After due consideration, it is

**ORDERED**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

   (A) Reconsider the opinions of Dr. Coleman and Dr. Nicolas, clearly state the weight assigned to them, and articulate the reasons therefor;

   (B) Reconsider Plaintiff's RFC;

   (C) Reconsider the opinions of Dr. Gondi, clearly state the weight assigned to them, and articulate the reasons therefor; and

   (D) Take such other action as may be necessary to resolve these claims properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered

in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 17, 2016.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jde
Copies to:
Counsel of record